The next case today is Trevor A. Watson v. The United States, Appeal No. 19-2134. Attorney Shevchenko, please introduce yourself for the record and proceed with your argument. Good morning, Your Honors, and may it please the Court. My name is Catherine Shevchenko, and I represent Appellant Trevor Watson. I would like to reserve two minutes for rebuttal. Yes, certainly. Thank you. Mr. Watson's counsel, Martin Lepo, provided ineffective assistance because he did not introduce evidence that Watson's motive for assaulting informant Curtis Best was an unpaid debt. To obtain a conviction for witness tampering, the government had to prove that Watson knew that Best was an informant. Other than the assault itself, its evidence was speculative, namely that Watson somehow learned about Best because his informant status was somewhere in the record of a completely unrelated murder trial. He tried to introduce some evidence, but the court sustained an objection. I'm not sure that the court actually got to sustaining an objection about hearsay in total. The court did explain, laid out a roadmap for how the counsel could introduce that evidence by simply asking Curtis Best whether he owed money and then recalling Al Rue, who then would have been able to testify that Best himself thought that Watson had attacked him because of the money. But when Best was cross-examining Best, he failed to lay that foundation. He established that Best owed money in general, and he established that Best had made a rap video. But he somehow fumbled in his attempt to connect Watson both to loaning money and to the video. And for that reason, the judge then counseled him that he might think about recalling Al Rue because he had simply not laid the proper foundation. But that goes to our claim of ineffective assistance to counsel, not that the debt itself was inadmissible on its own. Counsel, let me ask you a question. When this case was on direct appeal, the argument that you presented, counsel on appeal raised the issue, really didn't develop it, but he did raise that issue. Doesn't this act as a waiver now, this argument? No, I don't think it does because in this case, we are talking about ineffective assistance of counsel, not what evidence should or should not have been allowed. So that this goes to the fact that counsel did not interview witnesses that he could have called to the stand as Mr. Watson requested. And it also goes to the fact that he was unprepared. And when he did have a potential way, at least, to get this in, he failed to follow the breadcrumbs that the judge had laid down for him. Well, what are the witnesses? Let me just get something clear. What you're claiming is ineffective assistance of trial counsel. You're not claiming ineffective assistance of appellate counsel, correct? Correct. This is, yes, the trial counsel, Martin Lepo, and his performance in the original trial. When you say that he didn't interview other prospective witnesses, is there any evidence or any proffer in the record as to who else he may have interviewed who had information about the debt? His counsel in sworn statement did say that he had given him names of witnesses who could confirm that the debt existed. But the counsel, simply because of lack of time, there were only three weeks between the first trial and the second trial, did not get around to doing that. What I'm asking is that when the district court considered the habeas petition, was there any proffer as to what witnesses could have been called and what they may have said? Other than the statements by Mr. Watson himself and Attorney Lepo, I don't believe there was anything else. Thank you. Counsel, if counsel in the case felt that he was being blocked from bringing in what he thought was the best evidence of a different motive, that is Rue's testimony, why isn't it a strategic decision not to pursue that line in any event, rather than to come up with what might be weaker evidence? What sort of qualitative assessment are we supposed to make? Do you disagree that there was any strategic determination made? And if it was strategic, how is it that we're supposed to second-guess that under existing law? I would point to Attorney Lepo's sworn statement. He has been a member of the Bar for over 40 years. I believe this is the first time he has ever made such a statement, and he himself said that there was no strategic reason not to do this. In that particular case, also because there is no apparent downside to introducing this evidence, and certainly a strong upside in that it would have created reasonable doubt, because then the jury would have had a plausible reason for the assault. And as it stood without this evidence, it really had no reason other than the government's speculation. So the attorney's own statements, and the importance of the defense, and the fact that giving up a plausible strong defense with no strategic reason is ineffective assistance to counsel under Miller, I think that there's a pretty clear equation here. And can you address prejudice? How do you get over the evidence that Watson was essentially accusing him of being a witness while attacking him? We have one statement, which was, so you're talking, huh, during the attack. That was reported by Curtis Best only, not Al Rue, who was trying to break up the fight. There is also evidence in the record that, in fact, Best was saying that Watson was an informant. So that could go both ways. So you're talking because you're trying to say that I'm an informant, and I'm not. So I think that is ambiguous at best. Additional questions from the panel? You do have a minute if you want to use it, counsel. I guess I would just want to point out that the government has insisted that there is clear evidence of guilt in this case. We would dispute that. I think there is certainly clear evidence that Mr. Watson attacked Mr. Best. But assault with a deadly weapon is not what is at issue here. What is at issue here is witness tampering. And in order to show witness tampering, they had to show that Best knew, I mean that Watson knew that Best was an informant. And that is certainly lacking in the record and warrants at least an evidentiary hearing. Thank you, Ms. Shevchenko. You've reserved some time. If you would mute your audio and video, we'll hear from Mr. Quinlivan. Okay. Thank you, sir. Chief Judge Howard, and may it please the court, Mark Quinlivan on behalf of the United States. If I could take that last point first, because it's not just the government that's saying that there was overwhelming evidence of the defendant's guilt. That's exactly what this court said in its direct appeal. And I will quote, and this is on page 169, 695, Fed Reporter 3rd Series. Quote, the overwhelming evidence of Watson's guilt, including inter alia, the testimony of several witnesses, which was largely corroborated by the content of Watson's self-incriminating letters, significantly reduced the likelihood that the remarks unfairly prejudiced the jury's deliberations. And the district court, in denying Mr. Watson's 2255 motion and finding that the second prong of Strickland would not have been established, pointed out that any such evidence of an alternative motive in addition to being countered by the evidence of what the defendant said to Mr. Best when he stabbed him, that it was Watson's, that any such evidence would have been countered by, quote, Watson's remarks alluding to federal cooperation while attacking Best, Watson's lifelong close relationship with Best, Watson's involvement in the Paul Pierce case, Watson's consciousness of guilt in his prison letters, the threat that Best's informant testimony posed to Watson, and the porousness of the institution's keeping Best's identity secret, unquote. So it's not just the government that asserted that the evidence was so strong here that the defendant would fail under the second prong of the Strickland test. But if I could just point out that with respect to this claim, there really are two aspects to this claim. One is the failure to elicit the testimony from Al Rue regarding what Curtis Best said on the way to the hospital. And the second is the argument that defense counsel or trial counsel failed to interview witnesses. While the district court properly rejected the first claim for the reasons that have already been alluded to, defense counsel and trial counsel did try to elicit that testimony. The government, when he did elicit testimony from Mr. Rue, that he gave a different statement to authorities regarding what Mr. Best had said to him. But then when trial counsel asked what the substance of that or what Mr. Best had said to him, the government objected and the district court sustained that objection. And as the district court noted in denying the 2255 motion, counsel then made, which was an apparent choice, to then go to having failed to get in the testimony that would have allowed for this alternative theory. He went for the simpler strategy of arguing that the defendant did not know that Mr. Best was an informant. And I'd point out, and we noted this in his brief, he did ask Mr. Best if, in fact, he owed money. And, in fact, Mr. Best, in fact, he asked him, do you owe a lot of money on the street? And Mr. Best affirmed that he did. Now, he didn't ask the follow-up question, as we acknowledge, whether or not he owed money to the defendant, but that's the classic kind of tactical decision that counsel make in cross-examination, whether or not to ask the sort of ultimate question for which you may not know the answer. Now, turning to the failure to interview witnesses, the district court, and I would point out, the district court recognized that these were two separate aspects as the district court treated them separately in its memorandum decision. That argument does not appear in the defendant's opening brief. In fact, you know, I went back to check. I actually did the Control-F function to see, does the word interview appear in the defendant's opening brief? It doesn't. And that argument, therefore, is waived. And going to Judge Thompson to your question about whether there was any sort of a proffer, there was statements in Mr. Lepo's affidavit and the defendant's affidavit, as my friend has correctly noted. That's it. At most, at most, this claim would be subject to a remand for an evidentiary hearing. But again, if you go to the defendant's opening brief, the only relief they are seeking is a new trial. They have not requested an evidentiary hearing. So it's plain that this sort of second aspect to this argument is waived because there's no developed argumentation with respect to it. And in any event, this court ultimately doesn't need to go there for the reasons we've discussed. The defendant cannot make the showing under the second prong of the strict Lennon analysis. Counsel, let me ask you, you just mentioned, counsel is not requesting an evidentiary hearing, rather a new trial, but why isn't an evidentiary hearing necessary to make that determination? Judge Helpe, I guess I would have two answers to that. The first is it's not necessary because, as we said, the argument is waived. It does not appear in the opening brief. The argument is focused on the failure to elicit the testimony from Al Rue, not the failure to interview these other witnesses. So that would be my threshold argument. And then secondarily, as I just noted, an evidentiary hearing isn't necessary because, regardless of whether or not what might be found in an evidentiary hearing with respect to Strickland's first prong, he can't make the second showing that's required of prejudice under the Strickland analysis. Thank you. If the court has no other questions, we'll rest on the brief with respect to the remaining claims. Thank you, counsel. You would go ahead and mute your audio and video. And Ms. Shevchenko, you've reserved some time. Yes, Your Honors. In reference to the fact that this court on direct appeal said that there was overwhelming evidence of Mr. Watson's guilt, the key aspect that this court hinged its findings on was the fact that there were And I can say exactly. The court said the judge explicitly pervaded the government from intimating the motivation of Crystal Bostock's recantation. That restriction and the judge's cautionary instructions addressed the jury's ability to weigh the evidence further circumscribed any prejudicial impact. The problem is in the second trial, counsel did not make sure that those limiting instructions were given. The judge did not caution the jury against making improper references. Counsel said nothing. There was, in fact, a sidebar immediately after. And counsel did not ask the judge to caution the jury so that the soundness of the trial and the decision on direct appeal was based on these protective limiting instructions. And counsel did not make sure that they were given, thus exposing his client to greater prejudice. And that certainly would be ineffective assistance of counsel. A quick correction, we have asked in the alternative for an evidentiary hearing. So I do not believe that that is an issue. And in terms of prejudice, when there is, in a case like this, when we are asking for a new trial or an evidentiary hearing, there are three things that this court should look at. The first is the strength of the government's case. And, again, we would argue that the fact that Watson knew that Best was an informant is speculative at Best. And without that element, they could not obtain a conviction. Secondly, the quality of the defense, which, for reasons that we outlined in our brief, was substandard. And, secondly, the value of the new evidence. We certainly raised below the fact that Watson had asked for these witnesses to be interviewed. They weren't interviewed. But there's a difference between the quality of the new evidence and asking for witnesses to be interviewed. The problem is we don't know what the quality of any new evidence would be because nobody bothered to take affidavits from these persons that your client wanted interviewed. Yes. I'm sorry. So we don't know what their knowledge was about any money owed to anyone. Yes. And that is because counsel did not follow up on that, did not take those affidavits. But neither did Habe counsel. The problem is we don't know. Yes. That is true that we don't know, but that is the fault of counsel and not the fault of Mr. Watson, who certainly was requesting that his counsel get that information. Thank you, counsel. Thank you. That concludes arguments in this case. Attorney Shevchenko and Attorney Quinlivan, you should disconnect from the hearing at this time.